**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | |
|---|---|
| BONNIE LANNETT CLARK, | * |
| | * |
| Plaintiff, | * |
| v. | * |
| | *   No. 4:13CV00632-SWW-JJV |
| CAROLYN W. COLVIN, Acting | * |
| Commissioner, Social Security | * |
| Administration | * |
| Defendant. | * |

## RECOMMENDED DISPOSITION

### Instructions

The following recommended disposition was prepared for U.S. District Judge Susan W. Wright. A party to this dispute may object to this recommendation in writing. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Wright may adopt the recommended disposition without independently reviewing the record evidence. An objecting party who seeks to submit new, different, or additional evidence, or to obtain a hearing for that purpose, must address the following matters as part of written objections: (1) why the record before the magistrate judge was inadequate, (2) why the evidence was not presented to the magistrate judge,

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

and (3) details and/or copies of any testimony and/or documents to be proffered at a hearing. Based on this submission, Judge Wright will determine the need for a hearing.

**Recommended Disposition**

Bonnie Lannett Clark seeks judicial review of the denial of her application for disability insurance benefits.[3] Clark has applied for benefits based on the residual symptoms of a 2007 stroke, diabetes, high blood pressure, high cholesterol, and Bell's palsy.[4] She later complained about depression and anxiety. She maintains she has been disabled since she left her job at age 35.

**The Commissioner's decision**. After considering the application, the Administrative Law Judge (ALJ) determined Ms. Clark has severe impairments - diabetes, obesity, limited use of the left hand, and depression[5] - but can do some light work.[6] Because a vocational expert identified available work for a person with Clark's impairments,[7] the ALJ determined Clark is not disabled and denied the application.[8]

After the Appeals Council denied a request for review,[9] the ALJ's decision became a final decision for judicial review.[10] Ms. Clark filed this case to challenge the decision.[11] In reviewing the

---

[3]SSA record at p. 130 (alleging disability beginning Jan. 11, 2011).

[4]*Id*. at p. 147.

[5]*Id*. at p. 31.

[6]*Id*. at p. 33.

[7]*Id*. at p. 82.

[8]*Id*. at pp. 40-41.

[9]*Id*. at p. 1.

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal

2

decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[12] After careful review of this matter, the Court concludes that the ALJ's decision is supported by substantial evidence.

**Clark's allegations**. Clark challenges most aspects of the ALJ's decision. She states she cannot work because of the residual symptoms of a 2007 stroke. She has left-sided weakness, limited use of the left hand, and depression. She contends the ALJ failed to properly consider medical evidence about her stroke and erred by relying on agency medical experts who did not review evidence about the stroke. She challenges the ALJ's evaluation of her credibility, complaining that the ALJ improperly equated her statements as an unwillingness to work in a lesser capacity than her work as a case manager. She maintains the ALJ should have given controlling weight to her primary care provider's opinion about her ability work. She contends the vocational expert's testimony conflicted with the Dictionary of Occupational Titles. For these reasons, she argues, substantial evidence does not support the ALJ's decision.[13]

**Analysis**. For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Ms. Clark can do some light work.[14] "Light work involves lifting

---

only final decisions).

[11] Docket entry # 1.

[12] *See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[13] Docket entry # 15.

[14] *See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'")

3

no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[15] The ALJ placed the following limitations on light work: (1) ability to alternate between sitting and standing; (2) occasional use of the left hand; and (3) work learned and performed by rote with few variables, little judgment, incidental interpersonal contact, and simple, direct, concrete supervision.[16] The court must determine whether a reasonable mind would accept the evidence as adequate to show Clark can work within these parameters.

Ms. Clark's claims focus on residual symptoms of an August 2007 stroke.[17] She learned about the stroke in August 2008, when diagnostic imaging showed a "previous infarct;"[18] that is, the imaging showed evidence of an earlier stroke. Clark and her medical providers associated the stroke with an August 2007 black-out spell.

The evidence of the blackout spell consists of diagnostic imaging showing sinusitis,[19] but

---

(internal citation omitted).

[15]20 C.F.R. § 404.1567(b).

[16]SSA record at p. 33.

[17]See, e.g., id. at p. 161 (my life changed after a stroke in 2007; problems with left-sided weakness and my left hand made it hard to enter information into the computer; the stroke caused problems with balance, understanding, left-sided weakness, frustration, depression, and anxiety), p. 163 (the symptoms from Aug. 4, 2007 made it hard to operate the left side of my body like normal, without my left hand shaking, being weak, or stiff), p. 174 (I have residuals from a stroke: uneasiness regarding my face and extremities with unusual tingling and numbness; my left side is weakened; my hands tremble and shake at times) & p. 186 (my left side droops; I get confused and tired; I can't complete the workload I had). Clark also has diabetes and high cholesterol, but her claim doesn't focus on those impairments. To the extent those impairments affect her ability to work, Clark doesn't consistently monitor her blood sugar levels, comply with dietary restrictions, or exercise. In addition, she still smokes despite having had a stroke; smoking is a risk factor for stroke.

[18]Id. at p. 309.

[19]Id. at p. 315.

4

Clark complained about symptoms unrelated to sinusitis — hand tremors and hand numbness.[20] Based on the August 2008 diagnostic imaging and the reported blackout spell, a neurologist diagnosed an old stroke and a history of left-sided weakness probably due to the stroke.[21] The neurologist observed no hand tremor, but Clark had some mild left facial weakness.[22]

Ms. Clark believes the ALJ erred in not explicitly discussing the neurologist's findings, but neither the occurrence of a stroke nor the presence of residual symptoms is disputed. The dispute involves how residual symptoms affect Ms. Clark's ability to work. The most probative evidence of that question may be Clark's work record. She worked for nearly three and one-half years after the stroke. She says her symptoms — depression, left-sided weakness, and left hand tremor — worsened, forcing her to stop working,[23] but the evidence shows Clark stopped working because of a performance write-up.[24] She then sought other employment.[25] Both of these facts contradict her claim and support the ALJ's decision.

While sympathetic to Ms. Clark's claims, the lack of any treatment records also supports the ALJ's conclusions. The records reflect no complaints of worsening symptoms before she stopped

---

[20]*Id*. at p. 313. *See also id*. at p. 159 (applying for DIB and complaining about hands shaking, but alleging no problems with left arm), p. 162 (weakness on the left side makes it hard to use my left hand) & p. 175 (later reporting that my hands tremble and shake at times).

[21]*Id*. at p. 300.

[22]*Id*. at p. 302.

[23]*See id., e.g.*, at p. 58 (other workers helped me enter information into the computer to speed up the work), p. 163 (complaining about symptoms from Aug. 4, 2007), p. 178 (my health has declined significantly since 2007) & p. 186 (at work, I would get very, very tired and could not concentrate or complete my workload).

[24]*See id*. at pp. 54, 194 & 252.

[25]*Id*. at p. 75.

working.  The first mention of symptoms interfering with working is on December 8, 2010.[26]  On that day, Clark visited her PCP and complained about a new supervisor and a performance write-up. Clark was upset about being written-up, explaining that she had worked hard after her stroke.  She felt she was having a breakdown.  Clark didn't associate worsening symptoms with an inability to work until she quit her job and applied for disability.

Prior to quitting her job, Clark sought little medical treatment;[27] but after her application was denied, she began regular visits to her PCP and established care with mental health provider.  During those visits, Clark consistently associated disability with the 2007 stroke;[28] she complained about two symptoms - the use of her left hand and worsening depression.

Clark insists her left hand caused her to stop working on January 11, 2011, but the earliest medical finding about a problem with the left hand is eight months later.  On August 29, 2011, the PCP observed "early contracture [left] hand."[29]  On September 29, 2011, the PCP noted "[left] thumb

---

[26]*Id*. at p. 194.

[27]*Id*. at p. 335 (Sept. 10, 2009, PCP visit for upper respiratory infection), p. 329 (Oct. 2, 2009, PCP visit for health maintenance exam), p. 316 (Nov. 16, 2009, visit with allergist), p. 226 (Jan. 11, 2010, PCP followup for diabetes), p. 191 (Apr. 19, 2010, pap smear), p. 197 (Apr. 19, 2010, new PCP to establish care and obtain pregnancy test), p. 198 (Apr. 30, 2010, repeat pap smear), p. 196 (Oct. 8, 2010, PCP for sinus congestion and birth control) & p. 218 (Oct. 21, 2010, contraceptive counseling).

[28]*Id*. at p. 261 (June 3, 2011, feeling much better now that she's not working; denied disability; has an attorney), p. 368 (June 15, 2011, initial contact ; has applied for disability; she said left hand would not allow her to type for her job), p. 347 (July 1, 2011, disability denied again, weak grip in left hand), p. 343 (Aug. 1, 2011, 2007 stroke with left-sided weakness; has an attorney for disability claim), p. 353 (Oct. 3, 2011, depression caused her to quit her job; she had a nervous breakdown; seeks medication, but not therapy) & p. 340 (Nov. 14, 2011, has twice been denied for disability, left hand contracture).

[29]*Id*. at p. 342.

contracting."[30] On November 14, 2011, and December 19, 2011, the PCP noted "[left] hand contracture," and referred to the status of Clark's disability application.[31] The PCP didn't specify a reason for contracture, but muscle contractures — or abnormal muscle contractions — are associated with strokes.[32] Contractures following strokes are treated with stretching and splinting.[33] The PCP instructed Clark to wear a wrist splint when sleeping to keep her fingers from closing.[34] The medical findings about contracture are probative of Clark's claim because she claims left-hand contracture prevented her from working as a case manger, but there is no medical evidence of contracture until eight months after she quit working. This inconsistency weighs against Clark's credibility and supports the ALJ credibility evaluation.[35]

Ms. Clark attributes disability, in significant part, to depression and anxiety. However, the record shows Ms. Clark doesn't comply with prescribed treatment and her symptoms improve when she takes her medication as prescribed.[36] To receive disability benefits, a claimant must comply with

---

[30] *Id*. at p. 341.

[31] *Id*. at pp. 339-40.

[32] Jeffrey P. Larson, 2 The Gale Encyclopedia of Med. 1160 ( 4th ed.) ("Contractures can occur at any joint of the body. This joint dysfunction may be a result of immobilization from injury or disease; nerve injury, such as spinal cord damage and stroke; or muscle, tendon, or ligament disease.").

[33] Richard Robinson, Teresa G. Odle & Rebecca J. Frey, 5 The Gale Encyclopedia of Med. 4179 (4th ed.).

[34] SSA record at pp. 57 & 342.

[35] *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ may discredit a claimant based on inconsistencies in the evidence.").

[36] SSA record at p. 380 (doing better now that she is taking prescribed dose) & p. 10 (still has some depressive symptoms but overall medications are helping).

7

prescribed treatment if the treatment can restore the ability to work.[37] Ms. Clark's mental health provider explained how prescribed medication addresses anxiety and emphasized the importance of taking medication as prescribed, but Clark "continues to expect taking a dose of the medication will immediately [ameliorate] anxiety."[38] Clark's provider also recommended exercise to improve mood and sleep, but she does not follow this recommendation either.[39]

There is some evidence indicating Clark is unable to work, namely her PCP's statement.[40] Among other limitations, the PCP reported that Clark cannot use her left arm at all.[41] While the Court does not take this evidence lightly, the overall treatment record fails to support such limitation. The PCP's contemporaneous treatment note reflects no limitation in the left arm.[42] The PCP's earlier findings refer to the left hand, but suggest nothing preventing the use of the left arm. The lack of medical findings shows the statement reflects Clark's subjective allegations. So the ALJ could properly reject this statement as unsupported.[43] Additionally, later-presented evidence contradicts the PCP's statement. For example, on July 10, 2012, Clark saw a different PCP and complained

---

[37] 20 C.F.R. § 404.1530.

[38] *Id*. at p. 376.

[39] *Id*. at pp. 349 & 377.

[40] *Id*. at p. 371.

[41] *Id*. at pp. 372 & 73.

[42] *Id*. at p. 385.

[43] *Perkins v. Astrue*, 648 F.3d 892, 897-98 (8th Cir. 2011) ("ALJ may discount or even disregard the opinion of a treating physician…where a treating physician renders inconsistent opinions that undermine the credibility of such opinions"). There is an additional reason for discounting the opinion: the PCP is not an acceptable medical source for establishing a medical impairment. 20 C.F.R. § 404.1513 (listing sources who can provide medical evidence to establish impairment). Having a doctor sign the statement does not change the result because the co-signing doctor did not treat Clark.

about a left-hand tremor,[44] not the inability to use her left arm.

While the Court realizes many of these opinions are based solely on medical documents without examining Ms. Clark, the agency medical experts conclude Ms. Clark's impairments are not disabling.[45] The medical experts didn't review later-presented evidence - the August 2008 neurological exam and diagnostic imaging - but that evidence wouldn't have changed the result, because the occurrence of a stroke isn't disputed and that evidence doesn't document any impairment. Moreover, the ALJ limited Clark to a greater extent than the medical experts by requiring light work, occasional use of the left hand, a sit-stand option, and unskilled work. The medical evidence indicates Clark can exceed those limitations because she is a young, educated woman,[46] with little impairment. Nothing prevents Clark from lifting twenty pounds occasionally or ten pounds frequently. Ms. Clark "is unsure if she wants to pursue employment . . . as she would not be able to work at the level to which she was previously accustomed,"[47] but her former capacity is not the determining factor. The law considers a person disabled if her physical and/or mental impairments are so severe — considering her age, education, and work experience — as to prevent her from doing any kind of substantial gainful activity existing in significant numbers in the national economy, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[48]

The vocational evidence supports the ALJ's opinion that work exists that Ms. Clark can

---

[44]SSA record at p. 384.

[45]*Id*. at pp. 251, 258, 291 & 294.

[46]Clark has an undergraduate degree in English and a graduate degree in psychology.

[47]*Id*. at p. 348.

[48]42 U.S.C. § 1382c(a)(3)(B).

about a left-hand tremor,[44] not the inability to use her left arm.

While the Court realizes many of these opinions are based solely on medical documents without examining Ms. Clark, the agency medical experts conclude Ms. Clark's impairments are not disabling.[45] The medical experts didn't review later-presented evidence - the August 2008 neurological exam and diagnostic imaging - but that evidence wouldn't have changed the result, because the occurrence of a stroke isn't disputed and that evidence doesn't document any impairment. Moreover, the ALJ limited Clark to a greater extent than the medical experts by requiring light work, occasional use of the left hand, a sit-stand option, and unskilled work. The medical evidence indicates Clark can exceed those limitations because she is a young, educated woman,[46] with little impairment. Nothing prevents Clark from lifting twenty pounds occasionally or ten pounds frequently. Ms. Clark "is unsure if she wants to pursue employment . . . as she would not be able to work at the level to which she was previously accustomed,"[47] but her former capacity is not the determining factor. The law considers a person disabled if her physical and/or mental impairments are so severe — considering her age, education, and work experience — as to prevent her from doing any kind of substantial gainful activity existing in significant numbers in the national economy, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[48]

The vocational evidence supports the ALJ's opinion that work exists that Ms. Clark can

---

[44]SSA record at p. 384.

[45]*Id*. at pp. 251, 258, 291 & 294.

[46]Clark has an undergraduate degree in English and a graduate degree in psychology.

[47]*Id*. at p. 348.

[48]42 U.S.C. § 1382c(a)(3)(B).

perform despite her limitations. When asked about work for a person with Ms. Clark's limitations, the vocational expert identified cashier II and surveillance system monitor as representative work.[49] Clark contends those jobs conflict with the Dictionary of Occupational Titles because: (1) she can't use her left arm, (2) the ALJ didn't identify the frequency of alternating between sitting and standing, and (3) the identified job exceed her reasoning capacity. Clark's arguments provide no basis for relief for the following reasons.

First, the evidence does not show Ms. Clark cannot use her left arm. At most, the evidence shows she has a left hand tremor and periodic left hand muscle contractions that prevent her from typing as she did in the past. The limitations in the left hand do not prevent working as a cashier or a surveillance system monitor because Clark is right-hand dominant. Second, the requirement for alternating between sitting and standing embodies an "at will" option. Third, Clark demonstrated no cognitive deficits or concentration problems during the mental diagnostic evaluation.

## Conclusion and Recommendation

Plaintiff has advanced evidence and argument that supports her claims. But it is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ.[50]

There is ample evidence in the record as a whole that "a reasonable mind might accept as

---

[49]SSA record at pp. 81-82.

[50]*E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

adequate to support [the] conclusion" of the ALJ in this case.[51] The Commissioner's decision is not based on legal error. For these reasons, the Commissioner's decision should be AFFIRMED and Ms. Clark's Complaint should be dismissed with prejudice.

Dated this 10th day of December, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[51]*Richardson v. Perales*, 402 U.S. at 401; *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).